UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: APPLICATION OF TRACEY AMON FOR AN ORDER TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. 1:26-mc-372 |

**MEMORANDUM IN SUPPORT OF APPLICATION FOR ORDER
TO OBTAIN DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

Tracey Amon ("Amon") hereby submits this memorandum in support of her application

pursuant to 28 U.S.C. § 1782 for an order to obtain documents from The Heller Group, LLC,

previously known as Sanford Heller Fine Art LLC, and Mr. Sanford Heller (also known as

"Sandy" Heller).

I.       **SUMMARY OF REQUEST**

Amon seeks an order that she may issue a subpoena to Heller to obtain documents for use

in lawsuits pending in Bern and Lausanne, Switzerland (together, the "Swiss Actions"). The

Swiss Actions are in the nature of probate cases. They concern the disposition of assets of

Amon's late husband, Maurice Alain Amon ("Decedent"). Decedent was, until his death in 2019,

the sole beneficial owner of a number of companies and assets with an estimated value

exceeding $600,000,000. The Swiss Actions concern Amon's efforts to receive her lawfully

entitled share of those assets as his widow.

All facts herein are supported by the Declaration of Tracey Hejailan Amon, submitted

herewith, unless otherwise indicated. Points of Swiss law, and procedural history, are supported

by the memorandum of Fanette Sardet dated July 3, 2026 ("Sardet Memo"), appended hereto as

Exhibit 3, unless otherwise indicated. Attorney Sardet is Amon's counsel in the Swiss Actions.

No previous application for similar relief has been made.

1

## II.     **JURISDICTION**

Amon is the widow of the Decedent. Amon has a residence at 834 Fifth Avenue, New York, New York, which is within this Judicial District. Amon seeks to subpoena documents from The Heller Group, LLC, previously known as Sanford Heller Fine Art LLC, and Mr. Sanford Heller (also known as "Sandy" Heller), individually and in any capacity in which he performed, supervised, or holds documents concerning the valuation of the Artmon collection as addressed below (collectively, "Heller"). Heller has an office located at 745 5th Avenue, 4th Floor, New York, NY 10151, which is also within this Judicial District.

Amon makes this Application *ex parte*. This is appropriate and permissible. See Gushlak v. Gushlak, 486 Fed. Appx. 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*"). The parties to the Swiss Actions are in Europe and not subject to this Court's jurisdiction. Heller's due process rights are not violated by an *ex parte* application because it could later challenge any discovery request by moving to quash pursuant to Fed. R. Civ. P. 45(c)(3) or seek a protective order under Fed. R. Civ. P. 26 (c)). See Esses v. Hanania, 101 F.3d 873, 874 (2d Cir. 1996): Symeou v. Hornbeam Corp., 722 Fed. Appx. 7, 11 (2d Cir. 2018) (no impropriety in the *ex parte* nature of a § 1782 application). Out of an abundance of caution, Amon has served a copy of this application to the estate administrator in the Swiss Actions.

## III.    **FACTS**

### A.     **Decedent's Assets**

Amon is the widow of Decedent who, until his death in 2019, was worth more than approximately $600,000,000 in assets and business interests. Amon and Decedent married on December 22, 2008. Seven years later, on September 29, 2015, Decedent filed for divorce abroad

without first notifying Amon. Before notifying Amon of the divorce filing, Decedent removed more than 20 pieces of artwork worth more than $25,000,000 from their New York residence, and he also removed valuable marital property and artwork from other residences.

On July 24, 2018, while the divorce action was pending, the Decedent executed a purported will naming his son from a previous marriage, Albert Amon ("Albert"), as sole heir, and Decedent's assistant, Silvio Venturi ("Venturi"), as executor. Upon information and belief, the purported will was executed in order to disinherit Amon, despite the fact that they were still married. A later alleged codicil, executed in Singapore on or about March 17, 2019, purported to add additional legatees and beneficiaries.

Decedent died on July 26, 2019. His death and his attempted disinheritance of Amon spawned several lawsuits in Europe[1], with the main cases in Switzerland.

### B.    Discovery Sought From Heller

Decedent held most of his artwork assets through a holding company called Artmon Limited ("Artmon"), which is registered in the British Virgin Islands. The value of the artworks owned by Artmon is of paramount concern to the estate and, by extension, to Amon herself.

At all times relevant hereto, to the best of Amon's knowledge, Heller served as the artwork advisor to Artmon and was the steward of Artmon's art assets. See the contract between

---

[1] For background, these actions include:

    i.    Thun, Switzerland Action: Amon is the plaintiff in an action against Decedent's co-heir Albert and the de facto executor, Venturi, filed in the Bernese Oberland Court in Thun, Switzerland on or about February 3, 2020, docket number CIV 20 2324. In that action, Ms. Amon seeks to invalidate the unlawful disinheritance clause and to liquidate the matrimonial assets.

    ii.    Lausanne, Switzerland Action (First Case): Amon is also the plaintiff in an action against Decedent's co-heir and de facto executor Venturi in the Cantonal Large Claims Chamber, Lausanne under docket number CC20.006610/AMI, Lausanne being the Decedent's place of origin. This action was filed on February 3, 2020.

    iii.    Lausanne, Switzerland Action (Second Case): Amon is the defendant in an action brought by Albert and Venturi at the Justice of the Peace in Lausanne under docket ST19.037350 to liquidate the estate of Decedent.

Artmon and Heller dated January 1, 2013, appended to the Amon Declaration as Exhibit 1. Prior to that time (approximately mid-2012), there were other art advisors. Pursuant to that agreement, Heller assisted Artmon with a wide variety of art-related services, including searching for new art to acquire, evaluating the quality and condition of art, negotiating advantageous purchase prices, cataloguing acquisitions in a database, keeping the database updated, and advising on Fine Arts insurance. Id., par. 1. Artmon paid Heller an annual retainer fee plus a fee for art purchased on Artmon's behalf at auction. Id., par. 7. Heller thus played a central role in Artmon's art purchases, sales, valuations and inventories over at least the past 13 years. Id.

On December 17, 2024, the Justice of the Peace of the District of Lausanne ordered the official administration of the estate. On February 26, 2025, Olivier Weniger ("Weniger") was appointed official administrator. On December 19, 2025, Weniger issued an entry inventory of the estate together with annexes that include Artmon financial statements, and a "Limited Review Report" issued by KPMG dated January 15, 2025. That KPMG report concerned Artmon's valuation for 2019 (the year of Decedent's death). See the Amon Declaration, Exhibit 2.

It appears that the value of Artmon's artworks diminished dramatically during 2019. This diminution appears to be based at least partially on Heller's valuation. The KPMG report states, in relevant part:

> The Company carries out intermittent valuations with independent experts... The entire collection was the subject of a valuation of its market value for the financial year ended 31 December 2019. To carry out this valuation, the company mandated recognized experts, namely Mr. Sandy Heller [and others]. The result of these valuations is the following:
>
> • as regards the report of Mr. Sandy Heller, the latent (unrealized) capital losses amount to 33,418,374.50 EUR and the latent capital gains amount to

7,460,441.69 EUR;

Exhibit 2, p. 6.

Netting the latent losses against the latent gains in Heller's report yields a net latent loss of approximately EUR 25,957,933 (roughly USD $29.6M) attributable to his valuation. ***In other words, Heller's opinion is that the value of the Decedent's art fell precipitously by approximately $29,570,745 in 2019 alone, but there is no list of the works Heller actually examined, no methodology provided, and no information as to when Heller did its evaluation.***

Today, Amon, as Decedent's widow and heir, seeks the following information and documentation from Heller:

> (1)    The complete valuation report of Artmon Limited's assets as of December 31, 2019 attributed to Heller in Artmon Limited's financial statements (reflecting latent losses of EUR 33,418,374.50 and latent gains of EUR 7,460,441.69), together with all work product associated with that report including the list of works examined, the list of comparable works considered, documents reflecting the calculations and valuation methodology used, and all correspondence concerning same; and

> (2)    All documents concerning Heller's dealings and business involvement with Artmon Limited and/or the Estate of Maurice Alain Amon since July 26, 2019, including art sales, art purchases, consignments, transfers, storage arrangements, valuations, inventories, invoices, and correspondence.

## IV.    ARGUMENT

### A.    AMON MEETS THE REQUIREMENTS OF 28 U.S.C. § 1782.

As Decedent's widow and beneficiary, Amon is entitled to an accounting of the estate's art assets, their identity, location, valuation, and disposition. Today, Amon seeks to discover from Heller—a professional art dealer and steward—how the estate's assets were valued and where the estate's assets are. 28 U.S.C. § 1782 authorizes discovery for use in foreign tribunals:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal…  The order may be made pursuant to … application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a). There are three statutory requirements: (i) the discovery sought must be for use in a foreign tribunal, (ii) the court to be petitioned must be in the district where the party from whom discovery is sought is found or located; and (iii) the party seeking discovery is a foreign tribunal or an "interested party" in that foreign proceeding. Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004). Congress has expressed as its aim that the statute be interpreted broadly. In re Edelman, 295 F.3d 171, 180 (2d Cir. 2002).

Each element is satisfied here: (1) Heller resides, does business and/or can be found in this Judicial District; (2) the discovery sought is for use in a foreign tribunal, to wit: the Swiss Actions, and Swiss courts are "foreign tribunals" within the meaning of Section 1782, see, e.g., Top Matrix Holdings, Ltd., 18 Misc. 465, 2020 WL 248716, at *4 (S.D.N.Y. Jan. 15, 2020); In re ALB-GOLD Teigwaren GmbH, 19-mc-1166, 2019 WL 4140852, *8 (S.D.N.Y. Aug. 30, 2019); In re Grynberg, 223 F. Supp. 3d 197, 201 (S.D.N.Y. 2017); and (3) Amon is a party to the litigation in the Swiss Actions, and thus is an "interested person". See In re Application of Esses, 101 F.3d 873, 875 (2d Cir. 1996) ("interested person" includes parties to foreign litigation).

**B.      THE DISCOVERY SOUGHT IS REASONABLE, RELEVANT AND NARROWLY TAILORED.**

Once the statutory prerequisites have been satisfied, the Court must consider whether it should exercise its discretion and grant the §1782 application. In making that determination, the Court is guided by the following four factors identified by the Supreme Court: (1) First, whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) Second,

6

the Court may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign tribunal to U.S. federal court judicial assistance; (3) Third, whether the §1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions; (4) Fourth, whether the request is unduly intrusive or burdensome.

Here, Amon meets these discretionary factors as well:

(1) Heller is not a party to the Swiss Actions. Where the person from whom discovery is sought is not a party to the foreign action, a §1782 order may be the only available means for discovery. Intel, 542 U.S. at 264. Here, Heller is in New York and not subject to process in Europe.

(2) Absent specific directions to the contrary from a foreign forum, "the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1102 (2d Cir. 1995). There is certainly no reason to believe otherwise here. The Swiss tribunals would most certainly be receptive to discovery provided by Heller, as such discovery will shed light on the value of the Decedent's estate and thus the proper distribution of the assets therefrom. See In re Application of Shervin Pishevar, 439 F. Supp. 3d 290 (S.D.N.Y. 2020); In re Ex Parte Application of Porsche Automobil Holding SE, No. 15-MC-417 (LAK), 2016 WL 702327 (S.D.N.Y. 2016) (district courts consider whether the foreign tribunal expressly states it does not want the American court's help). The nature of the Swiss Actions are probate cases. They involve the disposition of a very substantial estate—upwards of $600,000,000—and the rights of a widow and statutory beneficiary. These cases also involve the efforts of the Decedent to disinherit his widow from her rightful portion of his estate. Further, the receptivity of a foreign court to U.S. federal

judicial assistance may be inferred from the existence of treaties that facilitate cooperation between the countries' courts. See In re Servicio Pan Americana de Proteccion, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) (foreign jurisdiction " indicated its receptivity to federal judicial assistance by its signature of treaties facilitating such cooperation"). Switzerland has entered into such a treaty with the United States. *See* Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (also known as the Hague Evidence Convention).

(3) Here, Amon is not seeking to circumvent any foreign proof-gathering restrictions. She cannot seek discovery from Heller in the Swiss Actions because they are in New York, not Switzerland. Nor is a §1782 applicant required to first exhaust its remedies in the foreign court. "Courts may grant §1782 applications even where the applicant did not first seek discovery in the foreign tribunal ... or where the information sought was not discoverable under the laws of the foreign country at issue in the foreign proceeding." In re BNP Paribas Jersey Tr. Corp. Ltd., 2018 WL 895675 (S.D.N.Y. 2018); see Top Matrix, 18 Misc. 465, 2020 WL 248716, at *5 ("discovery of evidence located extraterritorially can still be compelled under Section 1782.") There is no reason to believe that any of the discovery sought violates any public policy anywhere.

(4) These are not wide-ranging documents. Amon's requests are neither intrusive nor burdensome. She seeks basic, reasonable and readily-available documents and information concerning the doings, work product and accounting of a professional art steward and advisor. Here, Heller's doings have resulted in an extremely diminished valuation of the Decedent's estate in an amount over $29,000,000. *Presumably, Heller has made millions of dollars from the Decedent and Artmon over the past 13 years, and it should therefore not balk at being asked to*

*"show its work".* A request for such information can hardly be considered unduly burdensome by the standards of ordinary discovery. See <u>Mees</u>, 793 F.3d at 302 ("[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure.")  Further, the requested discovery is not protected by privilege.

In enacting §1782, Congress' intent was to provide a liberal avenue to discovery in aid of foreign and international proceedings. See, e.g., <u>Intel</u>, 542 U.S. at 247-48; <u>Brandi-Dohrn</u> at 80 ("[T]he statute has, over the years, been given increasingly broad applicability.") Each of these considerations weigh in favor of granting Ms. Amon's application here. Courts should exercise that discretion in light of the twin aims of the statute: "providing efficient means of assistance to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts. <u>In re Application of Malev Hungarian Airlines</u>, 964 F.2d 97, 100 (2d Cir. 1992); see also <u>Schmitz v. Bernstein Liebhard & Lifshitz</u>, 376 F.3d 79, 84 (2d Cir. 2004).

**CONCLUSION**

For the reasons set forth above, Amon has demonstrated that all three statutory factors and all four discretionary factors are met in this case in favor of the requested discovery pursuant to 28 U.S.C. § 1782. Accordingly, Amon prays for an Order of this Court:

1.  Granting her leave to subpoena the documents set forth above pursuant to 28 U.S.C. § 1782; and

2.  Granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

TRACEY AMON,

By her attorney,

Jonathan D. Plaut
New York Bar No.: 4509212
COHAN PLAUT RAJSICH LLP
50 Milk Street, 16th Floor
Boston, MA 02109
Tel: (617) 451-3200
E-mail: jdplaut@crmllp.com

-and at-

11 Broadway, Suite 615
New York, NY 10004

Dated: July 25, 2026